UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALPHONSO T., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 22-cv-12567 <br> Honorable Linda V. Parker <br> Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 15, 18)**

I.   **Introduction**

Plaintiff Alphonso T. appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After reviewing the record, the Court **RECOMMENDS** that:

- Plaintiff's motion (ECF No. 15) be **DENIED**;

- the Commissioner's motion (ECF No. 18) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II. Background

### A. Plaintiff's Background and Disability Application

Born in July 1972, plaintiff was 46 years old at the time of his alleged onset date of March 2019. ECF No. 9-2, PageID.48, 62. Plaintiff had past relevant work as a construction worker and material handler. *Id.*, PageID.62. He claimed to be disabled from congestive heart failure, high blood pressure, diabetes, kidney failure, chronic pain, pinched nerve, comprehensive urology/testosterone injections, a foot impairment, blockages with a stent placement, and diabetic neuropathy. ECF No. 9-3, PageID.150.

After the Commissioner denied his disability application initially, plaintiff requested a hearing, which took place in May 2021. ECF No. 9-2, PageID.48. Plaintiff and a vocational expert (VE) testified at the hearing. *Id.* In the decision that followed, the ALJ found plaintiff not disabled. *Id.*, PageID.64. The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. *Id.*, PageID.33. Plaintiff timely filed for judicial review. ECF No. 1.

**B. The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

3

education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, she found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. ECF No. 9-2, PageID.51. At the second step, the ALJ found that plaintiff had the severe impairments of degenerative disc disease; cervical degenerative disc disease, status post discectomy and fusion; lumbar degenerative disc disease; left knee bursitis; left ankle tendinosis; bilateral carpal tunnel syndrome; hypertension; coronary artery disease; and major depressive disorder. *Id.*, PageID.52. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.53-56.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform sedentary work[2] with added limitations:

---

[2] Sedentary work involves lifting or carrying no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and

4

occasionally climb stairs, crouch, crawl, kneel, stoop, bend, and balance as that term is defined in the SCO [Selected Characteristics of Occupations]; avoid workplace hazards, meaning no work around dangerous moving machinery or unprotected heights; never climb ladders, ropes, or scaffolding; frequently grasp (i.e. perform gross manipulation) and finger (i.e. perform fine manipulation) with the bilateral upper extremities; frequently reach in all directions with the dominant right upper extremity; limited to simple and routine work, defined as work that requires only simple decisions and no complex decisions, and that is not at a production-rate pace; limited to low stress work, defined as work that has less than occasional changes in the work routine and setting.

*Id.*, PageID.56. At step four, the ALJ found that plaintiff could not perform his past relevant work. *Id.*, PageID.62. At the final step, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that he could perform jobs that existed in significant numbers in the national economy, including final assembler, sorter, and addressing clerk. *Id.*, PageID.63. The ALJ thus concluded that plaintiff was not disabled. *Id.*, PageID.64.

### III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was

---

small tools; standing or walking for two hours out of an eight-hour workday; and sitting for six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(a); Social Security Regulation (SSR) 83-10.

made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff argues that substantial evidence does not support the RFC, as the ALJ failed to adequately address all of the medical evidence. ECF

6

No. 15, PageID.2844-2855. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

Plaintiff contends that the RFC is not supported by substantial evidence, as the ALJ did not adequately consider records showing exacerbation of his conditions after a December 2019 car accident. *Id.* Post-accident records, plaintiff argues, show worsening symptoms and aggravation of severe degenerative changes that ultimately required spinal surgery. *Id.*, PageID.2850-2854. In support, plaintiff cites MRI results; records from orthopedist Samer Saqqa, D.O.; and physical therapy records. *Id.*

In addressing these arguments, the Court is mindful that it lacks the authority to independently weigh the evidence. *See Hatmaker*, 965 F. Supp. 2d at 930; *Cutlip*, 25 F.3d at 286. In the same vein, "it is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (cleaned up). Plaintiff's arguments about how the ALJ evaluated the evidence conflict with this Court's limited role. Because the ALJ accurately addressed the cited records, none of plaintiff's arguments suggest that the ALJ abused her wide discretion.

The ALJ discussed plaintiff's treatment in late 2019 and early 2020 for right-hand numbness and tingling. ECF No. 9-2, PageID.58. She correctly noted that physical examinations before the accident showed slightly reduced sensation but full strength and range of motion. *Id.*; ECF No. 9-7, PageID.1036-1037; ECF No. 9-8, PageID.1350; ECF No. 9-9, PageID.2303. And given the mild abnormalities shown in EMG studies, the ALJ emphasized that specialists "did not indicate any surgical intervention was needed, but rather, prescribed only conservative modalities—physical therapy, nighttime wrist splinting, and nerve pain medication." ECF No. 9-2, PageID.58.

Plaintiff challenges the ALJ's observation that specialists recommended only conservative care, arguing that his condition worsened after the accident. ECF No. 15, PageID.2849-2850. But plaintiff's doctors recommended conservative treatment for his arm condition both before and after the accident. ECF No. 9-8, PageID.1351, 1357; ECF No. 9-9, PageID.2303. The ALJ also cited EMG studies from before and after the accident showing that plaintiff had only mild bilateral carpal tunnel syndrome, worse on the right than the left, with no firm evidence of superimposed cervical radiculopathy or brachial plexopathy. ECF No. 9-8, PageID.1320-1322; 1648-1650. That plaintiff later had spinal surgery does

not undermine the ALJ's findings; as discussed below, the ALJ addressed the surgery and plaintiff's recovery.  *See* ECF No. 9-2, PageID.59.

Contrary to plaintiff's argument, the ALJ also discussed his worsening neck pain and arm weakness in early 2020, after the car accident.  *Id.*  Consistent with the medical records, the ALJ acknowledged that plaintiff had cervical spine stiffness on examination and that cervical MRIs showed degenerative disc disease at multiple levels.  *Id.*

After the accident, plaintiff reported stiffness and pain in his neck that radiated into his arms, causing numbness and weakness.  ECF No. 9-7, PageID.1088-1089, 1257.  Dr. Saqqa observed that plaintiff's cervical spine range of motion was significantly restricted but that he had no weakness.  *Id.*, PageID.1260.  MRIs of the cervical spine showed severe spondylosis, with multilevel degenerative changes, severe spinal stenosis at C4-C5, and severe foraminal narrowing diffusely and bilaterally from C3 through T1.  *Id.*, PageID.1090, 1220-1221, 1260.  Dr. Saqqa believed that the accident "caused a combination of possible soft tissue injury in the form of cervical sprain and strain and possible aggravation of [plaintiff's] degenerative condition."  *Id.*, PageID.1260.  He recommended "exhausting all nonsurgical options at this point with [physical] therapy and possible diagnostic and therapeutic injections."  *Id.*

9

The ALJ also considered plaintiff's physical therapy records. ECF No. 9-2, PageID.59. The ALJ mistakenly said that those records showed improvement in plaintiff's function "from poor to good." *See id.* The records state that plaintiff's functional ability (e.g., looking up or down, turning his head, prolonged sitting, and reaching or lifting overhead) was initially "poor," while his goal was to achieve "good" functioning. *See* ECF No. 9-8, PageID.1663-1664. As plaintiff emphasizes, the records from January 2020 also show that he had moderate to severe paraspinal tenderness, muscle spasms in his arms, decreased range of motion due to pain and tightness, and significant muscular guarding at the cervical paraspinals. *Id.*, PageID.1653-1656, 1661-1664. Even so, the ALJ also considered physical therapy records from late January 2020 that state that plaintiff was improving and "feeling much better" after receiving a spinal injection and that his cervical tightness and tenderness had diminished from the previous day. *Id.*, PageID.1651-1652, 1657-1658. And the ALJ recognized that plaintiff required spinal surgery despite those slight improvements. ECF No. 9-2, PageID.59.

In late January 2020, plaintiff followed up with Dr. Saqqa. ECF No. 9-8, PageID.1320-1322. Plaintiff complained of decreased grip strength, pain in his neck that radiated into his arms, and lumbar pain. *Id.*, PageID.1320.

10

On examination, plaintiff had a positive Spurling sign, left grip weakness, and a positive straight leg raise, but otherwise exhibited no weakness, had good range of motion in the hips and knees, and walked independently. *Id.*, PageID.1322. Dr. Saqqa and plaintiff agreed to proceed with cervical spine surgery. *Id.*, PageID.1323. Plaintiff reported similar symptoms at an appointment with Andrew Tsai, M.D., in mid-February 2020; Dr. Tsai recommended using a night splint and was hopeful that the surgery would improve the symptoms in his arms. *Id.*, PageID.1356-1357.[3]

Plaintiff had surgery in May 2020. ECF No. 9-8, PageID.1381-1384. The ALJ found that the surgery was successful, noting that a post-operative MRI confirmed no recurrent disc protrusions and that plaintiff had not required more cervical injections since then. ECF No. 9-2, PageID.59. Substantial evidence supports these conclusions.[4]

---

[3] Plaintiff was in a second car accident in February 2020, which caused cervical pain and tenderness but no trauma, numbness, weakness, paresthesia, or focal deficits. ECF No. 9-8, PageID.1716-1718. Imaging studies taken after the accident aligned with previous imaging. *Id.*, PageID.1827-1828; ECF No. 9-9, PageID.2253, 2257-2258. The parties do not discuss the second accident, so neither does the Court.

[4] The ALJ also mistaken said that plaintiff required no more physical therapy. As described below, plaintiff's surgeon recommended continuing physical therapy. But that inaccuracy is harmless, as the evidence discussed below supports the ALJ's broader finding that plaintiff's cervical spine condition improved after surgery. *See Kobetic v. Comm'r of Soc.*

Immediately after surgery, plaintiff complained of numbness and pain in his right arm from the elbow down, but the surgery did not correlate with those symptoms. ECF No. 9-8, PageID.1368. One month later, plaintiff complained of neck pain, but his surgeon, Clifford Houseman, D.O., noted no new motor deficits, full cervical motor strength and reflexes, and x-rays showing that the hardware was in good position. *Id.*, PageID.1466-1467. Dr. Houseman encouraged plaintiff to allow time for improvement and to begin physical therapy. *Id.* Other physical examinations in the months after surgery were either normal or reflect minor findings. *Id.*, PageID.1453-1454 (normal range of motion, no bone tenderness, normal joints, normal neurological findings, no motor deficits), 1461-1462 (normal cervical motor strength and reflexes and recommended continuing physical therapy); ECF No. 9-9, PageID.2156-2157 (noting neck pain but finding that plaintiff was still recovering from surgery), 2266-2267 (noting tenderness and decreased range of motion in cervical spine).

By September 2020, plaintiff's cervical motor strength was 4/5 to 5/5, though he had a questionably positive Hoffman's sign on the right. ECF No. 9-9, PageID.2279-2280. A cervical spine MRI showed no recurrent

---

*Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." (cleaned up)).

disc protrusions and improvement in the stenosis and disc herniation at C3-C4 and C4-C5.  *Id.*, PageID.2246-2247, 2280.  Though stenosis was still present, there was no high-grade cord impingement, only moderate narrowing at C4-C5, and a minimal disc bulge at C5-C6 and C6-C7.  *Id.*  Physical therapy records show that plaintiff's pain levels decreased to 4/10, with less tightness in his neck and greater daily activity levels.  *Id.*, PageID.2351.

Plaintiff also had increased range of motion of the cervical spine in all planes, minimal to moderate dysfunction levels in the cervical spine, and improved posture with carryover into daily activities 80% of the time.  *Id.*  But Dr. Houseman approved the recommendation to continue physical therapy, as plaintiff still had a restricted range of motion, dysfunctions, and compromised daily activities.  *Id.*  Plaintiff argues that the ALJ did not discuss those limitations, but an ALJ need not directly address every piece of evidence in the record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).  The ALJ considered the record, and her finding that plaintiff improved with physical therapy is supported.

Last, the ALJ addressed plaintiff's reports of low back pain.  ECF No. 9-2, PageID.59.  The ALJ recognized that physical examinations revealed spinal spasms, left leg weakness, reduced grip strength, and positive

straight leg raise but that a lumbar MRI showed only mild degenerative changes. *Id.* The ALJ noted that plaintiff was treated with injections, medication, and physical therapy, and that plaintiff's orthopedist discouraged surgery since the conservative measures were offering relief. *Id.* Again, substantial evidence supports the ALJ's findings.

Plaintiff first reported low back pain that radiated down his left leg in January 2020, and Dr. Saqqa recommended having a lumbar MRI. ECF No. 9-8, PageID.1320-1322. A June 2020 MRI showed mild spondylitic changes. ECF No. 9-9, PageID.2039-2040. Plaintiff had a broad-based disc bulge at L5-S1, a small disc bulge at T11-T12 causing lateral recess stenosis, and mild foraminal stenosis at L4-L5. *Id.*; ECF No. 9-8, PageID.1462. But there was no high-grade stenosis. ECF No. 9-8, PageID.1462. Dr. Saqqa discouraged surgery and recommended pursuing conservative treatment like lumbar epidural steroid injections and increasing plaintiff's activity. *Id.* Plaintiff's pain management provider prescribed narcotics and administered injections. ECF No. 9-9, PageID.2157, 2267, 2270.

In September 2020, Dr. Houseman observed that plaintiff's lumbar motor strength was 5/5 on the left and was limited by pain to 4/5 on the right. *Id.*, PageID.2280. Dr. Houseman told plaintiff to continue pain

medication and again recommended that he "maximize conservative treatment," including physical therapy and pain management.  *Id.*, PageID.2281.  Plaintiff saw Dr. Houseman again in May 2021, and his lumbar motor strength ranged from 4/5 to 5/5.  ECF No. 9-10, PageID.2809-2810.  Dr. Houseman ordered another lumbar MRI and referred plaintiff for diagnostic SI joint injections to determine the cause of his lumbar pain.  *Id.*, PageID.2811.

After reviewing the record, the Court finds that the ALJ adequately considered the medical evidence and that substantial evidence supports the ALJ's findings.  Thus, the hearing decision should be affirmed.

## IV.   Conclusion

The Court **RECOMMENDS** that plaintiff's motion for summary judgment (ECF No. 15) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 18) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: November 6, 2023

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

    The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 6, 2023.

                                         s/Marlena Williams
                                         MARLENA WILLIAMS
                                         Case Manager